FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

2003 JAN 29  P 2: 06

CLERK'S OFFICE
AT BALTIMORE

| | |
|---|---|
| **CHANNEL COLEMAN** | : |
| v. | : Civil No. L-00-360 |
| **STATE OF MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, et al.** | : : : : |

## MEMORANDUM

Now pending are (i) Plaintiff's Motion to file a Fourth Amended Complaint and (ii) Defendant's Motion for Summary Judgment. On December 18, 2002, the Court held oral argument on the motions. For the reasons stated below, the Court will, by separate Order:

(i)  GRANT in part and DENY in part Plaintiff's Motion to file a Fourth Amended Complaint, as follows:

    (a)  DENY Plaintiff's motion to amend her complaint to include a § 1983 claim against the State of Maryland Department of Public Safety and Correctional Services ("DPSCS");

    (b)  GRANT Plaintiff's motion to amend her complaint to include a § 1983 claim against Kevin Carter for sexual harassment; and

    (c)  DENY Plaintiff's motion to amend her complaint to include a § 1983 claim against Kevin Carter for violations of her First Amendment rights; and

(ii)  DENY Defendant's Motion for Summary Judgment.

**I.  Factual Background**

Ms. Coleman was hired by the State of Maryland on February 11, 1998. She started work at the Division of Correction's central laundry facility ("Central Laundry") on April 1, 1998. Captain Kevin Carter was her supervisor. Plaintiff contends that, shortly after she began at the

Central Laundry, Captain Carter began harassing her. Plaintiff reports frequent incidents when Carter made lewd and offensive remarks such as, "Can I feel your butt?" and that he wanted to "watch [his] dick go into [Coleman's] wet pussy." She claims that Carter arranged to spend time alone with her while she was on post. Furthermore, Coleman contends that when she complained about this treatment, many of the supervisors retaliated against her by assigning her to disfavored posts, yelling at her over the radios, giving her poor evaluations and generally treating her badly. For example, one supervisor, Captain Barbara Perry, wrote Coleman up for leaving her post messy, although, it was common practice to leave the post in that fashion, Coleman contends. Coleman was terminated on December 19, 1998.

After receiving a right to sue letter from the Civil Rights Division of the Department of Justice, Plaintiff filed suit on February 7, 2000. In her current complaint, Coleman alleges Title VII claims of hostile work environment and retaliation against DPSCS.

## II.     Plaintiff's Motion to File a Fourth Amended Complaint

Coleman requests leave to file a Fourth Amended Complaint which adds § 1983 claims against DPSCS and Kevin Carter for violations of her First and Fourteenth Amendment rights.

Federal Rule of Civil Procedure 15(a) requires that leave to amend a pleading be freely given when "justice so requires." Fed. R. Civ. P. 15(a). Under the liberal standards of Rule 15, "leave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis in original).

### A.     Section 1983 claims against DPSCS

A § 1983 claim against DPSCS is inappropriate for two reasons. First, DPSCS is not a

"person" for purposes § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Second, DPSCS is immune from § 1983 claims. See Pennhurst State & Hosp. v. Halderman, 465 U.S. 89, 98-103 (1984). Accordingly, Plaintiff's motion to amend her complaint to include a § 1983 claim against DPSCS is DENIED.

### B.    Section 1983 claims against Kevin Carter

Plaintiff seeks leave to add § 1983 claims against Mr. Carter for sexual harassment and retaliation in violation of her First and Fourteenth Amendment rights.

Mr. Carter was named a defendant in this case when the original complaint was filed in February 2000. In the § 1983 claim, Mr. Carter will be represented, free-of-charge, by the attorney general's office. At the hearing, Plaintiff's counsel, Mr. Herman, informed the Court that the plaintiff would not rely on any new facts in support of her § 1983 claims against Mr. Carter. Thus, if the amendment is permitted, there will be no need to reopen discovery or permit additional briefing. The Court, therefore, finds that neither Mr. Carter nor DPSCS will be prejudiced by the addition of § 1983 claims against Mr. Carter. Furthermore, the Court finds no bad faith on the part of the plaintiff and concludes that the amendment would not be futile.

Accordingly, the Court GRANTS Plaintiff's motion to amend her complaint to include a § 1983 claim for sexual harassment. The Court, however, DENIES Plaintiff's motion to add a § 1983 claim for First Amendment violations because Ms. Coleman has failed to present any evidence that Mr. Carter was directly involved in the decision to terminate her. Moreover, if Ms. Coleman prevails in her retaliatory discharge claim against DPSCS, she will be fully compensated. The First Amendment claim, therefore, would further complicate the case without providing any benefit to the plaintiff.

### III. Defendant's Motion for Summary Judgment

#### A. Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

#### B. Analysis

The familiar burden-shifting standard that the Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Coleman's Title VII and § 1983 claims: if the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if the defendant provides such a reason, the plaintiff must then demonstrate that the proffered reason was a pretext. See Gillins v. Berkeley Electric Cooperative, Inc., 148 F.3d 413 (4th Cir. 1998). Although the burden of production shifts, the plaintiff retains the burden of persuasion throughout all the stages of proof. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996).

Viewing the facts in the light most favorable to Plaintiff, as the Court is required to do, the Court concludes that Ms. Coleman has asserted sufficient facts to meet her prima facie

burdens for hostile work environment[1], retaliatory discharge[2] and a sexual harassment claim under § 1983[3].

DPSCS, however, argues that even if Plaintiff meets her prima facie burden, it is still entitled to summary judgment because it has posited a legitimate, nondiscriminatory explanation for Coleman's termination. DPSCS contends that Coleman was fired because she had a negative attitude, did not get along well with co-workers, received poor evaluations and had a bad attendance record.

In response to this argument, Plaintiff contends that DPSCS's legitimate, nondiscriminatory reason for her termination is pretextual. To support this contention, Plaintiff offers the reports of Ernie Thornton, a field investigator with the EEOC. Following Plaintiff's complaint to the EEOC, Thornton conducted an investigation into Coleman's allegations and interviewed all parties involved. According to his reports, Thornton found that (i) every witness he interviewed at Central Laundry had heard rumors that Carter had sexually harassed Coleman; (ii) there was a strong probability that Carter had made improper comments to Coleman; (iii)

---

[1] To be actionable under Title VII, a defendant's conduct must be that which a reasonable person would find hostile or abusive. Although there is no precise test for determining whether a work environment is sufficiently hostile to be actionable, a court should consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. See Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993).

[2] To assert a prima facie case of retaliation a plaintiff must show that: (i) the employee engaged in protected activity; (ii) the employer took adverse employment action against the employee; and (iii) a causal connection existed between the protected activity and the adverse action. Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).

[3] To establish a claim for sexual harassment under § 1983, a plaintiff must show (i) the plaintiff was subject to intentional harassment, (ii) based on sex, (iii) under color of state law, and (iv) it was sufficiently extensive to render the work environment hostile to a plaintiff. See Cohen v. Litt, 906 F. Supp. 957 (S.D.N.Y. 1995).

because Central Laundry was so small, it was likely that supervisory personnel were aware of the harassment; and (iv) female supervisors were loyal to Carter and had treated Coleman harshly. (See Pl.'s Ex. K; Pl.'s Ex. D.)

In further support of her argument that Defendant's legitimate nondiscriminatory reason for her termination is pretextual, Coleman notes that, although her evaluations declined throughout her time at Central Laundry, the timing of her evaluations was suspect. In contrast to her March 1998 evaluation, which was filled out on April 10, 1998, and her April 1998 evaluation, which was filled out on May 11, 1998, her May 1998, June 1998 and July 1998 evaluations, which each showed a decline in her rating, were all filled out on August 18, 1998, just days after Ms. Coleman complained about Carter's harassment.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Ms. Coleman has produced sufficient evidence to demonstrate that Defendant's proffered explanation for her termination is pretextual. Accordingly, Defendant's motion for summary judgment is DENIED.

## IV. Conclusion

For the reasons stated above, the Court will, by separate Order,

(i) GRANT in part and DENY in part Plaintiff's Motion to file a Fourth Amended Complaint; and

(ii) DENY Defendant's Motion for Summary Judgment.

On Monday, February 3, 2003, at 4:00 p.m., the Court will hold a telephone conference to schedule the trial. One counsel is asked to initiate this call. The conference call may be recorded electronically; please, therefore, do not use a speaker phone.

Dated this 28TH day of January, 2003.

_____
Benson Everett Legg
United States District Judge